IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMEAKA H.,[1]                                    3:18-cv-00403-BR

        Plaintiff,                                OPINION AND ORDER

v.

Commissioner, Social Security
Administration,

        Defendant.


**KAREN STOLZBERG**
11830 S.W. Kerr Parkway, #315
Lake Oswego, OR 97035
(503) 251-0707

        Attorney for Plaintiff

_____

1 In the interest of privacy and pursuant to the recommendation
of the Judicial Conference of the United States, this Opinion
and Order uses only the first name and the initial of the last
name of the nongovernmental party.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SARAH L. MARTIN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2112

       Attorneys for Defendant


**BROWN, Senior Judge.**

Plaintiff Tameaka H. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings.


## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on November 2, 2012,

and alleged a disability onset date of January 1, 1999. Tr. 201-09.[2]  Her application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on December 15, 2014.  Tr. 36-86.  Plaintiff and a vocational expert (VE) testified at the hearing, and Plaintiff was represented by an attorney.

On December 10, 2015, the ALJ issued an opinion in which he noted Plaintiff had filed a previous application for SSI that had been denied and concluded there "is no apparent reason to reopen" that decision.  Accordingly, the ALJ found the relevant period for this application is November 2, 2012, through the present.  Tr. 14.  Ultimately the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 14-27.

On February 10, 2017, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-7.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on December 15, 1984, and was 30 years

---

2 Citations to the official transcript of record filed by the Commissioner on September 8, 2017, are referred to as "Tr."

old at the time of the hearing.  Tr. 201.  Plaintiff has an eleventh-grade education.  Tr. 20.  Plaintiff does not have any past relevant work experience.  Tr. 28.

Plaintiff alleges disability due to post-traumatic stress disorder (PTSD), severe depression, bi-polar disorder, and "slow learning."  Tr. 87.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 21-22, 24-27.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d

4 - OPINION AND ORDER

453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the

Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9ᵗʰ Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9ᵗʰ Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9ᵗʰ Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724.

The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the

Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her November 2, 2012, application date.  Tr. 16.

At Step Two the ALJ found Plaintiff has the severe impairments of hypothyroid, schizoaffective disorder, depression, history of alcohol abuse, history of marijuana abuse, PTSD, learning disorder, anxiety disorder, and history of amphetamine abuse.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff has the RFC to perform "a full range of work at all exertional levels that is low stress, meaning it consists of simple,

routing, repetitive tasks, that do not require more than
superficial interaction, . . . more than occasional changes in
the work setting or work processes, [or] . . . more than simple
problem-solving."  Tr. 19.

At Step Four the ALJ found Plaintiff does not have any past
relevant work.  Tr. 28.

At Step Five the ALJ found Plaintiff could perform jobs
that exist in significant numbers in the national economy.
Tr. 26.  Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly
rejected Plaintiff's testimony in part; (2) gave improper weight
to the opinions of examining psychologists Cheryl Brischetto,
Ph.D., and Rebekah Cline, Psy. D.; and (3) failed to include all
of Plaintiff's limitations in his hypothetical to the VE.

**I.    The ALJ erred when he partially rejected Plaintiff's
       testimony.**

Plaintiff alleges the ALJ erred by failing to provide clear
and convincing reasons for partially rejecting Plaintiff's
testimony.

In *Cotton v. Bowen* the Ninth Circuit established two
requirements for a claimant to present credible symptom

testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she is unable to work because her depression has "become worse."  Tr. 52.  Plaintiff also stated she sees and hears things every day such as "voices telling [her] to hurt [herself] or hurt other people or that people are out to get [her] or they're looking at [her] or following [her]."  Tr. 52.  Plaintiff testified she has anxiety

and panic attacks that are triggered by being in public or
around a lot of people.  The ALJ noted Plaintiff had been crying
"since we started talking" to her at the hearing.  Plaintiff
explained she was crying because the hearing was causing her a
lot of anxiety.  Tr. 54.  Plaintiff stated she does not have
many friends other than her friend Roy "because I always think
they are against me."  Tr.  55.  Plaintiff's relationship with
her family is affected by her mental issues.  For example,
Plaintiff's aunt brought her to the hospital for psychiatric
evaluation and treatment because Plaintiff kept saying her aunt
"was out to get [her, and she] felt [her aunt] was trying to
poison [her] food."  Tr. 55.  Plaintiff testified she does not
cook using a stove or an oven because she "forgets a lot of the
time."  Tr. 54.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause some of the
alleged symptoms to some degree," but Plaintiff's testimony
"concerning the intensity, persistence and limiting effects of
[her] symptoms [is] not entirely credible."  Tr. 20.

## A.    Plaintiff's Noncompliance with Medication

The ALJ noted the record contains numerous references
to Plaintiff suffering from hallucinations, psychotic activity,
and paranoid ideation, but he found "when [Plaintiff] is

regularly taking her prescribed medication, her symptoms improve." Tr. 22. For example, the ALJ noted Cintia Almonte, MHP, found on September 18, 2012, that Plaintiff "seemed less anxious than in previous sessions" after taking medication regularly. The record, however, reflects one week later on September 24, 2012, Almonte reported Plaintiff left the office "shortly after she arrived" because she was "feeling paranoid." Tr. 430. Almonte noted Plaintiff "presents with high levels of anxiety." Tr. 430.

Similarly, the ALJ noted Plaintiff stopped taking her medications in November and December 2012 and her condition deteriorated, but her condition improved when she began taking her medication regularly. The record, however, reflects Plaintiff continued to experience paranoia and had "taunting thoughts," "auditory hallucinations," anxiety, suicidal thoughts, and visual hallucinations at least from January through March 2013 when she was receiving mental-health treatment and medication. Tr. 407, 411, 414, 416. For example, on March 26, 2013, Plaintiff presented as "overwhelmed and in distressed [*sic*], she was tearful and appeared anxious and depressed." Tr. 402. In June 2013 Plaintiff stated she was taking her medications daily, but she "is not doing any better." Tr. 474. In addition, the record reflects Plaintiff was

homeless on at least two occasions when she was off of her

medications and that she may not be capable of appreciating the

importance of being on medications at all times.

Plaintiff asserts the ALJ failed to follow the

protocol set out in 42 C.F.R. § 416.930 and Social Security

Ruling 82-59 that is required for an ALJ to determine a

claimant's noncompliance with medication.  Specifically,

§ 416.930 provides:

> (a) What treatment you must follow.  In order to
> get benefits, you must follow treatment
> prescribed by your medical source(s) if this
> treatment is expected to restore your ability to
> work.
>
> (b) When you do not follow prescribed treatment.
> If you do not follow the prescribed treatment
> without a good reason, we will not find you
> disabled.
>
> * * *
>
> (c) Acceptable reasons for failure to follow
> prescribed treatment.  We will consider your
> physical, mental, educational, and linguistic
> limitations (including any lack of facility with
> the English language) when determining if you
> have an acceptable reason for failure to follow
> prescribed treatment.

SSR 82-59 further explains:

> SSA may make a determination that an individual
> has failed to follow prescribed treatment only
> where all of the following conditions exist:
>
> 1. The evidence establishes that the individual's
> impairment precludes engaging in any substantial

gainful activity (SGA) or, in the case of a
disabled widow(er) that the impairment meets or
equals the Listing of Impairments in Appendix 1
of Regulations No. 4, Subpart P; and

2. The impairment has lasted or is expected to
last for 12 continuous months from onset of
disability or is expected to result in death; and

3. Treatment which is clearly expected to restore
capacity to engage in any SGA (or gainful
activity, as appropriate) has been prescribed by
a treating source; and

4. The evidence of record discloses that there
has been refusal to follow prescribed treatment.

Where SSA makes a determination of "failure," a
determination must also be made as to whether or
not failure to follow prescribed treatment is
justifiable.

* * *

Where the treating source has prescribed
treatment clearly expected to restore ability to
engage in any SGA (or gainful activity, as
appropriate), but the disabled individual is not
undergoing such treatment, appropriate
development must be made to resolve whether the
claimant or beneficiary is justifiably failing to
undergo the treatment prescribed.

*Development With the Claimant or Beneficiary*--The
claimant or beneficiary should be given an
opportunity to fully express the specific
reason(s) for not following the prescribed
treatment.  Detailed questioning may be needed to
identify and clarify the essential factors of
refusal.

The record must reflect as clearly and accurately
as possible the claimant's or beneficiary's
reason(s) for failing to follow the prescribed
treatment.

> Individuals should be asked to describe whether
> they understand the nature of the treatment and
> the probable course of the medical condition
> (prognosis) with and without the treatment
> prescribed. The individuals should be encouraged
> to express in their own words why the recommended
> treatment has not been followed. They should be
> made aware that the information supplied will be
> used in deciding the disability claim and that,
> because of the requirements of the law, continued
> failure to follow prescribed treatment without
> good reason can result in denial or termination
> of benefits.
>
> * * *
>
> *Development With Treatment Source*--After
> documenting the claimant's or beneficiary's
> statements concerning the refusal of treatment,
> it may be necessary to recontact the treating
> source to substantiate or clarify what the
> individual was told. If possible such contacts
> should be made by the DDS staff physician.

SSR 82-59, at *2-*3 (emphasis in original).

The record does not reflect the ALJ asked Plaintiff to "express the specific reason(s) for not following the prescribed treatment," did not engage in detailed questioning in an effort to identify and to clarify the "essential factors" of Plaintiff's failure to remain on medication, and did not ask Plaintiff whether she understood the nature of her treatment and her prognosis with and without the prescribed treatment. It also does not appear Plaintiff was made aware "that, because of the requirements of the law, continued failure to follow

prescribed treatment without good reason can result in denial or
termination of benefits."  In addition, the ALJ does not point
to any treating or examining medical professional who opined
Plaintiff would be able to work on a regular and continuing
basis if she followed her treatment program.  For example,
Dr. Brischetto, examining psychologist, noted in October 2014
that Plaintiff "needs ongoing mental health evaluation and
consultation to manage her symptoms.  Her prognosis at this time
is very guarded with her current psychotropic medication
regime."  Tr. 548.  At best, Dr. Brischetto opined Plaintiff's
symptoms "*could* improve with continued management."  Tr. 548
(emphasis added).

Courts have held it is error for an ALJ not to follow
the requirements of SSR 82-59 when rejecting a claimant's
testimony based on the claimant's failure to follow prescribed
treatment.  *See, e.g., James R. v. Comm'r Soc. Sec.*, No. 2:17-
cv-00297-MKD, 2019 WL 267880, at *5 (E.D. Wa. Jan. 18, 2019)
("[T]he ALJ must consider the claimant's offered good cause for
failing to follow the recommended treatment.  SSR 82-59.");
*Leslee C. v. Berryhill*, 2019 WL 130298, at *4 (W.D. Wa. Jan. 8,
2019)("[B]efore finding inconsistency [in the plaintiff's
testimony] on [the basis of the plaintiff's failure to follow
treatment], the ALJ must consider possible reasons for a failure

to comply with or seek treatment, such as an inability to afford treatment or side effects less tolerable than symptoms.").

## B.  Plaintiff's Work History

The ALJ also rejected Plaintiff's testimony in part on the ground that she provided inconsistent reports of her work history.  Specifically, the ALJ noted Plaintiff reported in November 2011 that she had not worked since 1999.  The ALJ, however, points to a report by the Cooperative Disability Investigations Unit (CDIU) in which the investigator reported an unidentified witness provided the investigator with a proof-of-employment verification letter that Plaintiff provided to the witness on signing the lease for Plaintiff's apartment. Tr. 532.  According to the CDIU report,

> [t]he letter was dated June 13, 2011 from
> Macedonia Baptist Church (MBC) Operation Hope.
> The letter was typewritten on MBC letterhead
> basically stating [Plaintiff] has been employed
> with them since 5/2011 on a part-time basis and
> works 20 hours a week, attaining a salary of $840
> a month.

Tr. 532.  Plaintiff, however, points out that when the investigator attempted to verify this information, he found the telephone number listed on the letter was no longer a working number, one of the addresses listed on the letter was no longer an MBC, and the other address on the letterhead had limited hours and no one responded to the investigator's attempts to

contact the occupant.  Tr. 532.  In addition, Plaintiff's
earnings record reflects only self-employment earnings of $2,124
for 2011 and $1,416 for 2012, which does not support the
allegation that Plaintiff was employed at MBC and/or earned $840
per week for a year.  Tr. 213.  Moreover, Plaintiff does not
remember being self-employed.  The Social Security
Administration noted it made several attempts to determine
whether Plaintiff was employed during 2011 and 2012, but it was
unsuccessful.  Tr. 214-17.  In addition, Plaintiff notes she has
not been provided with copies of the material allegedly given to
the investigator that indicated Plaintiff was employed by MBC.
The Court concludes this record does not support a finding that
Plaintiff failed to report her work for MBC.

In summary, the Court concludes on this record that the ALJ
erred when he partially rejected Plaintiff's testimony because he
did not provide clear and convincing reasons supported by
substantial evidence in the record for doing so.

**II.  Examining Psychologists' Opinions**

Plaintiff asserts the ALJ erred when he gave little weight
to the opinions of Drs. Cline and Brischetto, examining
psychologists.

An ALJ may reject an examining physician's opinion when it
is inconsistent with the opinions of other treating or examining

physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

## A.   Dr. Cline's Opinion

Dr. Cline conducted a psychological evaluation of Plaintiff on September 21, 2011. Dr. Cline diagnosed Plaintiff with major depressive disorder, panic disorder, and a learning disability. Dr. Cline opined Plaintiff's emotional lability, "anger dyscontrol," and depressed mood would have a moderate to marked affect on Plaintiff's ability to work. Tr. 333. Dr. Cline found Plaintiff was markedly limited in her ability to understand, to remember, and to "persist in tasks by following complex instructions of three or more steps"; to learn new tasks; and to communicate and to perform effectively in a work setting with even limited public contact. Tr. 335. Dr. Cline found Plaintiff was moderately limited in her ability to perform routine tasks "without undue supervision," to be aware of normal hazards and to take appropriate precautions, and to maintain

19 - OPINION AND ORDER

appropriate work behavior.  Tr. 335.  Dr. Cline concluded

Plaintiff's

> current constellation of symptoms appears quite
> severe. . . .  Thus she would likely benefit
> greatly from a psychiatric assessment and
> medication trials.  She will also need assistance
> in succeeding in employment. . . .  She currently
> has problems with ADL's [*sic*] including self-
> care, shopping and preparing food, and with
> social interactions.

Tr. 335.

The ALJ gave little weight to Dr. Cline's opinion on
the grounds that it "is inconsistent with [Plaintiff's] actual
performance of work activity at that time" and it predates the
revised relevant period.  Tr. 27.  As noted, the Court has
concluded the record does not support the ALJ's finding that
Plaintiff actually performed "work activity" during the time
Dr. Cline conducted her evaluation.

The Ninth Circuit, however, has held "[m]edical
opinions that predate the alleged onset of disability are of
limited relevance."  *Carmickle v. Comm'r*, 533 F.3d 1155, 1165
(9th Cir. 2008)(citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir.
1989)).  *See also Warzecha v. Berryhill*, 692 F. App'x 859, 860
(9th Cir. 2017)(same).  "However, it is clear from [Ninth
Circuit] precedent and the Social Security Regulations that 'the
ALJ must consider all medical opinion evidence.'"  *Williams v.*

*Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012)(quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.2008)).

As noted, Plaintiff alleged disability beginning in 1999, but the ALJ limited the relevant period to after November 2, 2012, based on Plaintiff's earlier SSI application that was denied.  The ALJ considered Dr. Cline's opinion as required by the Ninth Circuit, but he found it was of limited relevance because it predated the relevant period as permitted by the Ninth Circuit.

Accordingly, the Court concludes on this record that the ALJ did not err when he gave limited weight to Dr. Cline's opinion because he provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**B.   Dr. Brischetto's Opinion**

On October 10, 2014, Dr. Brischetto conducted a psychodiagnostic examination of Plaintiff.  Dr. Brischetto noted Plaintiff was "very anxious and paranoid[,] . . . yelled profanities and obscenities several times . . . reportedly in response to her voices[,] . . . and appeared to have difficulty focusing on the mental status tasks."  Tr. 547.  Dr. Brischetto noted Plaintiff's "thought content was significant for paranoia and auditory hallucinations[,] . . . her mental tracking did not

appear to be good[, and] . . . her mental persistence appeared

limited." Tr. 547. Plaintiff advised Dr. Brischetto that she

was on antipsychotic medications and seeing a counselor, but she

did not believe her medications were working sufficiently.

Dr. Brischetto stated Plaintiff "needs ongoing mental health

evaluation and consultation to manage her symptoms. Her

prognosis . . . is very guarded with her current psychotropic

medication regime." Tr. 548. Dr. Brischetto expressed "some

concern" about Plaintiff's possible noncompliance with taking

her medications and stated Plaintiff's symptoms "could improve

with continued management." Tr. 548. Dr. Brischetto concluded

Plaintiff's

> insight and judgment appeared limited. She has
> difficulty with socialization. She has some
> symptoms of agoraphobia. She is paranoid. She
> appeared to be responding to internal distractors
> in the form of hallucinations during the session.
> She would have severe difficulty at this point
> maintaining attention and concentration in a work
> setting. She would have significant difficulties
> with social interaction and adapting to a work
> environment.

Tr. 549.

The ALJ gave little weight to Dr. Brischetto's opinion

on the ground that Dr. Brischetto "fail[ed] to take into account

[Plaintiff's] noncompliance with her prescribed medication

regimen, as well as her improvement with consistent and

appropriate treatment, on her ability to perform work activities."  Tr. 26.

As noted, the ALJ did not inquire of Plaintiff why she occasionally failed to take her medication.  The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999)(quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  The record also does not reflect any treating or examining medical professional stated Plaintiff would be able to work on a regular and continuing basis if she followed her treatment program.

In addition, as noted, although the record reflects Plaintiff improved at times when taking medication regularly, the record also reflects times when Plaintiff was taking her medication and still suffered from serious mental-health issues that could impede her ability to work.

On this record the Court concludes the ALJ erred when he gave limited weight to Dr. Brischetto's opinion because he did not provide clear and convincing reasons supported by

substantial evidence in the record for doing so.

**III. The ALJ failed to include all of Plaintiff's limitations in his hypothetical to the VE.**

Plaintiff alleges the ALJ erred when he failed to include all of Plaintiff's limitations in his hypothetical to the VE. Specifically, Plaintiff alleges the ALJ failed to include limitations identified by Plaintiff in her testimony and by Drs. Cline and Brischetto in their opinions.

As noted, at Step Five the Commissioner must show the claimant can do other work that exists in the national economy. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of the limitations of the claimant. *Id.* The hypothetical posed to a VE must include those limitations supported by substantial evidence in the record. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 883, 866 (9th Cir. 2006).

The Court has already concluded the ALJ erred when he rejected some of the limitations asserted by Plaintiff and Dr. Brischetto. On this record, therefore, the Court also concludes ALJ erred when he did not include those limitations in his hypothetical to the VE.

## IV.   Remand

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding
> issues that must be resolved before a
> determination of disability can be made, and
> (3) it is clear from the record that the ALJ
> would be required to find the claimant
> disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are required because it is necessary for the ALJ to determine why

Plaintiff failed to take her medications and whether any treating or examining medical professional found Plaintiff would be able to engage in substantial gainful activity if she followed her treatment program.  In addition, if the ALJ concludes Plaintiff has established sufficient reasons for her failure to maintain her treatment regimen, the ALJ must consider Plaintiff's relevant limitations as assessed by Dr. Brischetto and asserted by Plaintiff.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 19th day of February, 2019.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge